DAN N. FIORITO III
The Law Office of Dan N. Fiorito III
844 NW 48th Street
Seattle, WA 98107
Phone: (206) 299-1582
Fax: (206) 770-7590
Email: dan@danfiorito.com
*Pro Hac Vice*

LINDA M. DEOLA
Morrison, Sherwood, Wilson & Deola, PLLP
401 North Last Chance Gulch
P.O. Box 557
Helena, MT 59624-0557
Phone: (406) 442-3261
Fax: (406) 443-7294
Email: ldeola@mswdlaw.com
                                                       **Attorneys for Plaintiff**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| JESS J. DAVIES<br>      Plaintiff,<br>vs.<br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; and ANDREW WHEELER,[1] Administrator,<br>      Defendants. | CV 17-115-H-BMM<br><br>BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37 (e) |
|---|---|

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the current Administrator of the Environmental Protection Agency, Andrew Wheeler, is automatically substituted for former Administrator Scott Pruitt.

1

## I. INTRODUCTION

Plaintiff moves for sanctions against the Defendant pursuant to Rule 37(e). R. Civ. P. as a result of the Defendants' failure to produce three emails that the Federal Occupational Health (FOH) sent to EPA employee Maureen O'Mara regarding his medical status. (Doc. 75 at 1-2).

Plaintiff previously filed a Motion to Compel these documents (Doc.74). There is no dispute they have not been produced. As discussed in this Court's Motion to Compel Order, "[T]he emails that the EPA produced failed to include three emails that the FOH sent to EPA employee Maureen O'Mara regarding Davies's medical status. A "Medical Monitoring Chronology" prepared by O'Mara indicates that the missing emails were dated September 19, 2016, December 2, 2016, and January 9, 2017." (Doc. 75, Ex. M, (Doc. 117 at 2-3).

Plaintiff has since discovered a fourth email that existed between Ms. O'Mara and FOH that was not produced, and that EPA is unable to locate. Ex. A, *Defendant's Response to Plaintiff's Third Interrogatories and Requests for Production, RFP 59.* Ex B, USA 5430. The existence of the email was not known by Plaintiff at the time of his Motion to Compel. Defendant has acknowledged it cannot find the email; thus, an additional Motion to Compel the production of this email would be moot.

It is undisputed that Defendants were required to preserve this evidence. There is no dispute that it has not been produced. Given the critical nature of the

content of these missing e-mails, discussed below, sanctions against the Defendant are warranted.

## II. LEGAL STANDARDS and ARGUMENT

Rules 37(e) F. R. Civ. P. provides:

**(e) Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
**(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
**(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
**(A)** presume that the lost information was unfavorable to the party;
**(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or
**(C)** dismiss the action or enter a default judgment.

A recent 9th circuit case set forth the applicable standards under Rule 37(e):

> The parties agree that the Okupnik call is electronically stored information or ESI, and that Rule 37(e) governs this dispute. Rule 37(e) sets forth three criteria to determine whether spoliation of ESI has occurred: (1) the ESI "should have been preserved in the anticipation or conduct of litigation"; (2) the ESI "is lost because a party failed to take reasonable steps to preserve it"; and (3) "[the ESI] cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). If these criteria are met and the court finds that there is "prejudice to another party from [the loss] of the ESI," Rule 37(e)(1) instructs a court to "order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).
>
> However, if ESI is spoliated and a party "acted with the intent to deprive another party of the information's use in the litigation," Rule 37(e)(2) authorizes the imposition of more

3

severe sanctions including an adverse inference jury instruction. Fed. R. Civ. P. 37(e)(2)(B) (a court may "instruct the jury that it may or must presume the [spoliated] information was unfavorable to the party"). Unlike Rule 37(e)(1), there is no requirement that the court find prejudice to the non-spoliating party under Rule 37(e)(2). "This is because the finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position." 2015 Advisory Comm. Notes.

Rule 37(e) does not define "intent." However, the 2015 Advisory Committee Notes to the amendment of Rule 37(e) advise that "[n]egligent or even grossly negligent behavior" is insufficient to show "intent." 2015 Advisory Comm. Notes. Accordingly, courts have found that a party's conduct satisfies Rule 37(e)(2)'s intent requirement when the evidence shows or it is reasonable to infer, that the party purposefully destroyed evidence to avoid its litigation obligations. *See, e.g., First Fin. Sec., Inc. v. Freedom Equity Grp., LLC*, No. 15-CV-1893-HRL, 2016 U.S. Dist. LEXIS 140087, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016) (finding that the defendant's agents acted with intent in deleting text messages based on evidence of an "explicit agreement to avoid communicating electronically," which "suggest[ed] a shared intent to keep incriminating facts out of evidence"); *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 501 (S.D.N.Y. 2016) (the plaintiff's conduct was intentional under Rule 37(e) because, absent "any other credible explanation for [plaintiff's alteration of] the email addresses, it is more than reasonable to infer that the intention was to manipulate the digital information specifically for purposes of this litigation"); *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 582 (S.D.N.Y. 2017) (the plaintiff's conduct was intentional under Rule 37(e) where the evidence showed that the plaintiff either purposefully deleted e-mails that showed she might have fabricated the existence of a report that was critical to her lawsuit or purposefully failed to take any steps to preserve the e-mails) (citing cases).

*Porter v. City & Cty. of San Francisco*, 2018 U.S. Dist. LEXIS 151349, *6-9, 2018 WL 4215602

    a.    <u>RULE 37 (e) (1) Criteria has been met in this case</u>

There is no dispute that Defendants failure to produce the e-mails meets the criteria under 37(e)(1), described by the *Porter* court. Accordingly, when "... these criteria are met and the court finds that there is "prejudice to another party from [the loss] of the ESI," Rule 37(e)(1) instructs a court to "order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1)." Id.

Mr. Davies has been prejudiced by EPA's failure to produce these e-mails. The e-mails are critical to this case. Ms. O'Mara and Dr. Rosenberg undeniably communicated via email and Ms. O'Mara had primary responsibility on behalf of EPA to work with FOH to determine whether Mr. Davies could perform all essential functions of a criminal investigator. She was the conduit of information exchanged between FOH and EPA regarding Mr. Davies' second medical fitness for duty evaluation, yet these e-mail communications, identified in a log she prepared and specifically identified are missing. (Ex. C, USA 3111-3114)

Mr. Davies was medically cleared as a condition of becoming employed by the EPA on February 17, 2015. Dr. Rosenberg was the FOH physician that cleared him. After his employment began, on August 21, 2016, Mr. Davies filed a complaint with the U.S. Office of Special Counsel regarding his belief that the EPA was discriminating against him and notified Mr. Martinez that he had filed the complaint. (Doc. 75 Ex. I) A few weeks later, according to Ms. O'Mara's

chronology, on September 14, 2016, she sent an FOH-22 form to John Gauthier for Mr. Davies to complete allegedly to obtain "respiratory clearance". By September 19, 2016 Dr. Rosenberg reversed his prior decision and determined that Mr. Davies was not medically qualified. After Mr. Davies medical clearance was reversed, he was instructed that in order to get "re-qualified" he must produce all of his VA disability records.

The validity of the required second medical clearance imposed upon Mr. Davies and the validity of the request for all of Mr. Davies VA medical disability records is suspect for several reasons. For the second medical clearance, EPA required him to complete a FOH-22 under the guise that it was needed for him to obtain "respiratory clearance." However, wearing a respirator was not disclosed as an essential function of the job and Mr. Davies' first medical clearance (which included disclosures made on a FOH-5) addressed and tested for respiratory related conditions. (Ex D, Plaintiff 119-125)

Ms. O'Mara testified during her deposition that all employees had to complete the FOH-22 for Hazardous Waste Operations Training (Ex. E, Excerpts O'Mara Depo. P. 37 L. 20-38 L. 14.) Yet an EPA generated e-mail from January of 2017 clearly states that FOH did not require current employees to complete a FOH 22. Notably, recipients of the e-mail were directed to contact the author, Paula Thomas or Ms. O'Mara (Ex. F). So, Ms. O'Mara's deposition statement that

6

all employees were required to complete an FOH 5 is simply not true. This condition seemingly was only imposed upon Mr. Davies.

The FOH 22 also became the catalyst for EPA imposing the additional requirement on Mr. Davies that he disclose all of his VA medical disability records. But here too, the EPA cannot establish the basis for this requirement. Regardless, in terminating Mr. Davies, the EPA used the alleged failure to produce all of his VA disability records as cause for termination. Moreover, when asked during her deposition whether she could identify any documentation from FOH confirming that the information Mr. Davies provided regarding his service-connected disability was insufficient, Ms. O'Mara admitted she could not (Ex. E, Excerpts O'Mara Depo. pp. 117-118).

Furthermore, the EPA cannot produce the email FOH allegedly sent to it with the FOH 22 form attached  Ex B, USA 5430. Consequently, there is no evidence to substantiate that the FOH 22 came from FOH. The inference from this missing email is that the EPA ordered the FOH-22 to be completed on it's on volition and not at the direction of the FOH.

During Dr. Rosenberg's deposition he had no explanation for why EPA would need Mr. Davies' complete VA disability records particularly after Mr. Davies had already been medically cleared. Yet, the record shows that Dr. Rosenberg requested these records. When asked why he requested Mr. Davies'

complete VA disability records, Dr. Rosenberg did not know the answer to that question either. (Exhibit G, Excerpts Rosenberg Depo. pp. 34-39).

Who was directing Dr. Rosenberg to seek out Mr. Davies' complete VA disability records and who determined that what Mr. Davies provided was insufficient? These are significant unanswered questions and Mr. Davies believes that the communications that have disappeared between Ms. O'Mara and Dr. Rosenberg likely would provide answers to these questions.

To this end, the dates of the missing e-mails are significant. As noted, the dates of the missing e-mails are September 19, 2016, December 2, 2016, and January 9, 2017. Ms. O'Mara issued the FOH-22 form to Mr. Davies on September 14, 2016 supposedly for respiratory clearance. The EPA cannot produce any email to demonstrate FOH in fact sent EPA the FOH 22, despite Ms. O'Mara's representation that this in fact was the case (Ex B, USA 5430). It would be highly unlikely for FOH to require the FOH-22 given that FOH advised EPA that a FOH 22 was not required for current employees.

On September 22, 2016, the Director of Resource Management (Helena Wooden-Aguilar) sent an e-mail regarding the re-certification of Mr. Davies. Her e-mail raised multiple points. Among those relevant to this motion she stated:

> 2. I raised to John that FOH cleared him when he on boarded and John G basically said it's complicated and there are discussions <u>happening with Maureen regarding this</u>. . . .

> 4. John then said that when folks are not cleared there is a process that they can undertake to get cleared. It seems that management in CID feel like the flags are troublesome. They want to cut their loses (sic) and want options (e.g., terminate).

*emphasis added*

(Ex. H, USA 3305)

This e-mail was written three days after the first missing e-mail and it specifically refers to Ms. O'Mara as being aware of the complications seemingly related to re-certifying Mr. Davies. Also significant is that the EPA was seeking to terminate Mr. Davies. "Management in CID feel like the flags are troublesome." Are the flags Mr. Davies was reporting EPA's conduct? Clearly, Ms. O'Mara was aware of the situation as she is specifically referenced in this e-mail. It is not unreasonable to assume that the September 19, 2016 missing e-mail addressed some of these issues.

Notably in June of 2016 the idea of using "documentation" as a potential means to terminate Mr. Davies was presented by EPA's Vernon Jackson. In June of 2016, Mr. Davies was inquiring about leave for him to move from one duty station (Montana) to another in Ohio. A question had been raised whether EPA could withdraw its offer of employment to Mr. Davies. This issue will be discussed in detail in Plaintiff's summary judgment motion but for purposes of this motion, in June of 2016 the acting director for CID, Ted Stanich, was advised that while the offer to Mr. Davies could not be withdrawn, since it had been accepted,

9

"[W]ithout any specific evidence of suitability issues or <u>Davies' inability to submit required documents</u> it would be problematic to withdraw the offer."

*emphasis added*

In response, it was clear Mr. Stanich understood how not submitting "required documents" could be for a basis for termination, as in his response he only asked for clarification on "the definition of suitability issues." (Ex. I, USA 4851-52). Within a few months of this communication the EPA had identified all of Mr. Davies' VA disability records as "required" for him to be medically cleared for the second time, and significantly, the EPA terminated Mr. Davies for his alleged failure to produce these "required documents." The first section of the termination letter is entitled "FAILURE TO PROVIDE DOCUMENTATION TO DETERMINE FITNESS FOR DUTY", (Ex. J, Plaintiff 17).

By September 29, 2016, conference calls were being arranged to discuss whether CID wanted to "clearly communicate that we want to remove him [Davies]?" (Ex. K, USA 4279)

During this same time frame, at EPA management's request, Ms. O'Mara was looking for guidance on what the standards were for deciding whether a veteran's pre-existing VA disability would make him unfit for duty. Former EPA Special Agent in Charge Michael Burnett testified that he told Ms. O'Mara that if

10

EPA hired somebody with a disability, it was wrong to remove that person for the same disability. (Ex L, Excerpt of Michael Burnett Depo. p. 6)

Did the e-mails between Ms. O'Mara, who was dealing with the "complicated" issues regarding Mr. Davies' prior medical clearance and the current medical clearance (and use of the FOH-22) and Dr. Rosenberg provide any insight into what the EPA expected from Dr. Rosenberg?  It seems reasonably so. It has been established that Dr. Rosenberg cannot explain why he asked Mr. Davies for his complete VA disability records or why EPA would require these documents for an employee that had already been medically cleared.

The second missing e-mail, December 2, 2016 is at or about the same time various individuals were discussing termination of Mr. Davies (Ex. M, USA 4220-21).  Likewise, at the time of the third missing e-mail, January 9, 2017, discussions were taking place regarding Mr. Davies and what should or not should be included in a letter of termination (Ex. N, USA 4097, 4105, 4220-21).

Ms. O'Mara was clearly the individual tasked with pursuing the FOH-22 requirement, even though FOH did not require this to be completed by current employees.  This form was then used as the catalyst for demanding all of Mr. Davies' VA disability records, and then the alleged failure to produce all of the records, became cause for termination.  The why and how of the second medical certification and the why and how for requiring production of complete VA

11

disability records is central to this case. Clearly, any communications between Ms. O'Mara and Dr. Rosenberg, the individual who medically qualified Mr. Davies and then retracted this qualification, are highly relevant in this case.

Mr. Davies has been prejudiced by the EPA's failure to produce these e-mails. Whether the failure is intentional or not is discussed below. The criteria under Rule 37(e)(1) as described in *Porter* has been met and Plaintiff asks this Court to remedy the situation by drawing a negative inference from EPA's failure to produce these e-mails.

    b.    <u>EPA's conduct is intentional under Rule 37(e)(2)</u>

Whether or not the Court finds that Plaintiff is prejudiced by the missing e-mails, Plaintiff requests relief under Rule 37(e)(2) due to the intentional spoliation of evidence created by the EPA.

Defendants have failed to provide a viable explanation as to why or how these e-mails vanished. The government has a highly sophisticated e-mail retrieval system. Indeed, the EPA has produced thousands of e-mails through the use of various search terms and the EPA has represented with respect to the e-mails at issue, that multiple searches were performed. There can be no dispute that these e-mails existed when they were specifically identified in Ms. O'Mara's log, yet they are gone.

Although intent is not defined in Rule 37, as noted by one court cited in the *Porter* case, conduct can be intentional under Rule 37(e) when, absent "any other credible explanation for [plaintiff's alteration of] the email addresses, it is more than reasonable to infer that the intention was to manipulate the digital information specifically for purposes of this litigation"; *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 582 (S.D.N.Y. 2017).

Given the level of sophistication of the government's e-mail search system, as described by the EPA in response to Mr. Davies Motion to Compel, it is more reasonable than not to infer that intentional manipulation, i.e. deletion of the e-mails at issue occurred.

If intent is found a court may:

**(A)** presume that the lost information was unfavorable to the party;
**(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or
**(C)** dismiss the action or enter a default judgment.

### III.    CONCLUSION

The e-mails in question relate to principal key issues in this case and have vanished. It is fundamentally unfair for the EPA to escape the failure to produce these documents without a significant consequence especially when the EPA is alleging that FOH alone was responsible for evaluating Mr. Davies' medical fitness. Not only has the EPA failed to produce the email where it allegedly received the FOH-22 from FOH, it cannot provide any of the email correspondence

with FOH referenced in Ms. O'Mara's chronology. Therefore, based upon the foregoing, Mr. Davies asks the Court to presume the information that has disappeared was unfavorable to the EPA, that the EPA decided to issue to FOH-22 to disqualify Mr. Davies, or in the alternative, for the Court to fashion whatever remedy it deems appropriate.

DATED this 22nd day July, 2020.

/s/ *Linda Deola*
Attorney for Plaintiff

/s/ *Dan N. Fiorito*
Attorney for Plaintiff, *Pro Hac Vice*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(d)(2)(E) of the Montana Federal Local Rules of Procedure, I certify that the foregoing brief, is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double spaced; and the word count calculated by Microsoft Word for Mac is 3,131 excluding caption and certificate of compliance.

DATED this 22nd day of July, 2020.

                                       /s/ *Linda Deola*
                                       Attorney for Plaintiff

                                       /s/ *Dan N. Fiorito*
                                       Attorney for Plaintiff, *Pro Hac Vice*